Work case number 1-3-2-Ga 8 21029 May I please the court. My name is Stephanie Dinkle and I represent the Permanent Appellant at the F.E. Moran Municipal Lawn. Could you speak up a little louder, please? Absolutely. Counsel, please adjust the microphone and keep your voice up. We have a whole audience in the back. As you can see, there are very high ceilings here. So, everybody needs to hear. So, it may sound like you're shouting, but we really would like everyone to hear. Today, we ask that the jury's verdict be vacated and the ruling of the circuit court denying F.E. Moran's motion for judgment, notwithstanding the verdict, be reversed and judgment be entered in F.E. Moran's favor as a matter of law. As set forth in the briefing, there are three fundamental legal matters upon which the circuit court ruled an error, which we move to correct today on appeal. Each of these errors alone warrants reversal. All three of the issues are matters of law which should have never gone to the jury. The court has instructed us to look first at the issue of consideration. And in that regard, counsel, I have a couple questions I would like to ask you, please. First, assuming that Mr. Vogler had authority to offer the plaintiff the bonus, what exactly did he promise the plaintiff? Mr. Vogler's authority was limited to the four corners of the CBA. So, he had authority to set his wages, but with regard to the bonus, he only had authority to offer a discretionary bonus program. So, as Mr. Porter admitted and testified, Mr. Vogler never told him that there was a guarantee. He only had authority for Mr. McCombie to offer the potential for a discretionary or gratuitous payment. And the, didn't he tell the plaintiff, though, that he would earn the bonus by saving the company man hours? Based on Mr. Vogler's testimony during trial, he, that was one element of the, what he explained to Mr. Porter. Okay. And isn't that what plaintiff did as part of his job? That is, try to bring the job in, in as few man hours as possible or under the expected man hours? Mr. Porter performed his job, which he was hired to do, in which he admitted as a foreman for Effie Moran, it's a term and condition of their employment that they're always to bring in jobs under budget. So, what Mr. Porter did... Well, what does that mean, under budget? So, when a job is bid, a certain number of man hours are set that the job should be brought in at or below. And Mr. Porter admitted that it was his job as the foreman of his crew to ensure that that was met or to bring in the job under those hours. So, in this instance, he didn't perform anything in addition to what he was already obligated to do as a foreman. And he conceded that? Correct. Are you familiar with the pre-existing duty rule? I am, Your Honor. And what's your understanding of that rule? It's my understanding that the pre-existing duty rule actually applies in this instance because it's a rule that says when you're already obligated to do something, such as here, he was already obligated to bring in the job under the man hours, you have to do something more in order to show consideration, which is not the... The promise to pay a bonus is unenforceable for lack of consideration when the employee is only giving the same service he had already agreed to do with the employer, correct? Correct, Your Honor. And that's exactly the case here. So, I guess what we're wondering is, so what is the extra that he did that would support the modification in his bonus? What was the extra consideration that the plaintiff undertook here? And that's a good question, Your Honor. As it shows from his complaint, plaintiff never pled what the consideration was from the beginning. And all the way through trial, that's still a question that was never established. Whose burden is it? It's plaintiff's burden, Your Honor. And actually, during the motion for JNOB, plaintiff's counsel admitted, quote, that we would never actually know whether he worked harder or whether he did anything in addition. And that's the problem here. He didn't do, as he testified, anything more than he's done for the last 44 years in his career to work to the best of his ability in bringing these jobs under budget. So he never did anything more to offer any consideration for this bonus. And Your Honor mentioned a modification in the bonus. There was no modification. It was a discretionary payment from the beginning. And they made the determination based on the discretion, their ability to do so, to not end up paying that based on the job. But you understand your position on that first issue. You're saying that under the preexisting duty rule, because there was nothing extra that the plaintiff did, he simply continued to do everything he was doing before, there was, in fact, no consideration for the bonus. Correct, Your Honor. Now, but plaintiff was an at-will employee, correct? He could have quit at any time. He actually was a union employee. So from that aspect, he wasn't an at-will employee because we did not have the ability as the employer to fire him for any reason. We would have had to have gone through the terms and conditions of the CBA. So from that aspect, he was not an at-will employee. Now, Your Honor may look at it that he could have left at any time. Right. So the flip side of that, if we look to the case law, the Gustafson case, for example, or the Morvey-Arachnin case, which is cited within some of the cases in my briefing, in the at-will situation, in order to establish that that continued employment would be sufficient consideration, Correct. That's where I'm going. that bonus had to show that or some term of that bonus had to be to induce that continued employment. So this wasn't like Gustafson then? It's not, Your Honor. Why not? It's not like Gustafson because in that instance, the man was working on the night shift. Right. And the court noted that he didn't have to continue to show up, but he did. And he testified that part of the exchange between him and the employer was that When you say he didn't have to show up, you mean he didn't have to show up on the night shift? Meaning he was at-will in that instance. He could have quit his job. Well, he decided to work on the day shift? That wasn't discussed, Your Honor, but it was more of the fact that since he was at-will, he didn't necessarily have to show up tomorrow. He could have, as an at-will employee, can resign his employment. It wasn't a bonus based upon the fact that he was going to work at night? Exactly, Your Honor. That was part of the terms. It was to induce his continued employment to come to that night shift. And here, there's no testimony whatsoever from Porter. So there's no testimony that it was to induce his continued employment. And Porter actually testified that he, after the Parkview job, he wanted to keep running work for F.E. Moran, whether or not a bonus was that issue. So the facts here actually show that it was completely opposite. It was not to induce his continued employment to show up whatsoever, unlike Gustafson. From whose perspective do we look at this? I mean, plain if there's an attorney, the employer tells him, hey, you're going to get a bonus if you continue to work here and do your job. Why wouldn't he rely on that to his effort? If somebody dangles his bonus in front of him, isn't that sort of an inducement to keep working? Not necessarily, because it depends. It's a discretionary bonus. So as an employer, unless there's something in writing which there wasn't here saying that, you know, that he's going to get it under certain terms, it's totally at the employer's discretion whether to issue a bonus. Often in the law firm example, it's a written document where it explains the terms, but here that wasn't the case. Now here our trial judge did rule that there was consideration as a matter of law before the jury heard any evidence, correct? Correct, Your Honor. And so do you not argue, however, that the evidence at trial failed to prove consideration even though the jury didn't consider that element? Was that part of your argument? Well, our argument is that we agree with her that's an issue of law and in our directed verdicts and in our JNOB, we argued that the evidence showed a total lack of consideration here. So her ruling was in error as a matter of law. Okay, so, and she ruled with respect to consideration on the plaintiff's motion in Limine No. 3, correct? Correct. But you didn't ask for a new trial? You asked instead for a judgment in OB? We did, Your Honor. And the reason for that is although in our JNOB we didn't mention the No. 3 by number of the motion in Limine, we argued that she erred as a matter of law. So that, you know, if there's no foundation of consideration, essentially the whole house of cards falls. Well, on that issue, the judge ruled there was no consideration to support the bonus or the consideration was insufficient as a matter of law. She ruled that him doing his job was consideration. She said she wasn't going to get into the sufficiency of the consideration, just that consideration exists as a matter of law. She actually, oh, go ahead. Sorry. She said on record page 657, I'm finding whether there's consideration as a question of law, and it would only be a question of fact if there's a dispute of the facts. And she explained that there's no dispute that all he did here was his job. On page 129, she, I'm sorry, the circuit court acknowledges that the only evidence of consideration was that he did his job and nothing more. And we are, our position is now that as a matter of law, there was a total lack of consideration. Do you have other bases for reversal? We do, Your Honor. Similar basis for, or I'll also add to that, based on the McInerney v. Charter golf case, in addition to his continued employment also wasn't sufficient because he didn't give up anything of value here. In that case, it explains to us that you have to give up a specific job offer or there has to be some concrete detriment.  he was unemployed at the time he took his job and he didn't give up anything of value. And so that further solidifies the fact that there's no consideration. And that is part of your statute of frauds argument? Is that correct? Those two actually link together, Your Honor. So that also goes to the consideration and then moving on to the statute of frauds for very similar reasons as to why there's no consideration. The statute of frauds also applies here. Well, doesn't full performance take it out of the statute of frauds? That is an exception. That is an exception to the statute of frauds. However, we believe that the full performance here, that that exception wasn't satisfied. First, because the full performance didn't take place within one year, which is What authority, in fact, Justice McLaren, I believe, authored a case, Noges, indicating that that one-year exception doesn't apply to the full performance, that it doesn't have to be done within a year. Why do you say it does? So following Noges, and actually where the E.V. Charter-Gall case, in the Supreme Court there states, We have held that a party has fully performed an oral contract. Speak a little more slowly, please. Oh, sorry. Sorry. It will be a little easier to follow. No problem. Thank you. So quoting McGee and E.V. Charter-Gall regarding the one-year provision, they stated, We've held that a party who has fully performed an oral contract within the one-year provision may nonetheless have the contract enforced. So in other words, the Supreme Court states that in order for the oral contract was not supported by a signed written document, his full performance must have been possible within that one year. Was that dicta in the McNerney case? Wasn't that dicta? They do cite, I believe, to three appellate court cases, one of which is actually the Noges case. In addition, in order for the full performance element to or exception to apply in this case, Porter has to establish that his performance was solely attributable to that contract. And that element is not met here for the same reason, that there's a lack of consideration, because he only did the job that he was hired to do. In the Intini v. Marino case, performance must be such that if the remedy was withheld, it'd be fraud upon the promise, if not carried out. And here, there's no fraud because he was paid, according to the CBA, for the job that he performed. This isn't a situation where the only thing left to do is pay him. He received his wages, his overtime, even double time in some instances. Now, you, I'm sorry, go ahead. If a contract is fully executed, what magic is in the number of years or months or days, insofar as the statute of frauds is concerned? Well, the statute of frauds applies, obviously, when one, when the contract can't be performed in one year, and so it's our understanding, according to the McGeer and Eby charter golf case, that that performance would need to happen in one year, otherwise You didn't answer my question. I'm sorry. My question relates to the fact that if a contract is fully executed by one of the parties, then what is the magic in the statute of frauds, or any case, coming up with it's got to be in one year?    It does not say that it has to be performed in two years, five years, 10, 15, or even 20 years. If it took 20 years for the contract to be fully executed, why wouldn't it be fully executed and therefore enforceable? I would just point back to the language of the statute, that it explains that it has to be performed within one year. And I would also add that in order for that full performance exception to pull us out of the statute of frauds, that it has to be solely, the performance has to be solely attributable, which it's not here, and also he has to reasonably rely on that bonus. It seems like you're adding another element to the statute, which is, it not only has to be executable within a year, but it actually has to be executed within a year. Fully performed within one year, yes. So, you're determining that, or put another way, you've stuck into the statute a requirement, it not only has to be capable of being executed in a year, it also has to be executed in a year. Maybe I'm mistaking, but it has to be capable of being performed in one year, and if the performance doesn't take place within one year, or it's not capable of taking place within one year, then the full... And so, therefore, if it takes one year and a day, you're saying that the plaintiff who is seeking relief is out of law. That's one element of the full performance exception, yes. Counsel, let me ask you this. If we were to decide that the bonus was not supported by consideration, we would not need to get into the statute of frauds issue, would we? Correct, you would not, because without consideration, there's not a valid contract, and we don't have to go down the next two roads. Turning for just a minute to the issue of preemption, now, if we were to hold that this case is preempted by federal law, what tribunal would hear this case? So there's two ways to look at that. There's two elements of preemption here. One, the NLRA, and then second, the LMRA. So the first, the National Labor Relations Act, if we found preemption under there, the National Labor Relations Board holds the exclusive jurisdiction, and so that's where the claim would have had to been brought before. If we find preemption under the LMRA, the options were that he would have had to grieve his grievance through the union grievance procedure, it would have gone to arbitration, and then he could have brought a Section 301 claim in federal court pursuant to the Labor Management Relations Act. Now, let me just ask two other quick questions. McCombie instituted this bonus incentive program with Brian Moran's knowledge, correct? Correct, Your Honor. Okay. And so, and McCombie also knew that Bogler had spoken to the plaintiff about a bonus. So with that said, how can your client now turn around and claim that its own conduct was in violation of the collective bargaining agreement? So, there's two points to respond to your question, Your Honor. First, McCombie had knowledge that Bogler spoke to him in his belief regarding a discretionary bonus program. And then the second part, essentially, if we acknowledge this happening, essentially you're asking if we knew we were violating the NLRA. And here it's if plaintiff's allegations are taken as true, it would be a violation of the NLRA and it would have been an unfair labor practice and therefore the claim would have been preempted. Thank you. You will have an opportunity to make the vote. Thank you, Your Honor. Thank you. Is that your cut? Yes. Mr. Walker, you may proceed. Good morning. Good morning. I'm going to take my time to address the issue of consideration. If there are questions about the other parts of my brief, I'd be certainly obviously happy to answer all of those questions. Defendant argues here that there was no consideration because plaintiff Porter was only doing what he was already obligated to do in the pre-existing duty condition. There is consideration here, however, because for this bonus contract and there's two reasons for that. Under the Doyle case, there was a detriment to the defendant offeror and a corresponding benefit to the plaintiff. And secondly, under the Molina case, after the offeror... Did you mean a corresponding benefit to the plaintiff? Did you mean a corresponding benefit to the defendant? No. I meant to the plaintiff a detriment to the offeror and a benefit to the plaintiff offeree. The court used the word award. But Doyle really was a very different situation. There, there was a written employment agreement governing the discharge of these employee nurses, correct? That's correct. Okay. And in Doyle, didn't the Supreme Court require the employer to give consideration because the employer had unilaterally taken away certain rights that had been granted under the employee handbook? Yes. Okay. So, it was the employer who had to furnish consideration as it had sought to reduce the rights of the plaintiff's employees under the handbook. That's correct. It was a detriment to the employees. So, the defendant provided nothing of value to the plaintiff's there. And, right? Right, but I think... And so, consideration for this modification of the employee handbook that operated to the disadvantage of the employee was not supplied, according to the case, by continuing to work. Right, because it took away rights from the plaintiff. Right. Well, here, how were any rights taken away? This is a totally different fact situation. There were no rights taken away from your client, the plaintiff. Were there? Right. There were no rights taken away. There were rights added to the contract. And, as a result, there was consideration because of this continued employment with defendant Moran. Well, how does Doyle apply here, then, at all? Well, I was using Doyle more for the detriment to the offeror and benefit to the offeree, and that's how I saw that it applied here, because there was a benefit to the income, additional wages in the way of a bonus, and a detriment to the employer in that he agreed to pay that if the matter came in under the actual man-hours paid if he met the conditions of the bonus. Well, how does that argument square with the existing duty rule that you allude to? Where is the change in the terms of the plaintiff's employment? As Justice Sotomayor said, it did not alter the terms of the plaintiff's employment in any way. It didn't restrict them. He basically continued on doing what he was doing with the offer of a bonus. I'm sorry. So what was the reliance? It did change the contract because it added to the contract the promise to pay if he brought it in under actual man-hours. But that's where the argument's breaking down. We understand. Assuming you're correct that there was a promise to pay, where is the underlying consideration in the law for that to support that promise? That's what the whole case is about. Where is the underlying consideration for that? The continued employment after he was made, after that offer was made was the detriment to the employer to pay that if he meant that. You say continued employment. Did the defendant tell the plaintiff that he would be terminated if he didn't accept his bonus? No. But that's not a requirement. What's the continued employment? He was doing exactly the same job on the same terms as he was doing before the bonus was offered, wasn't it? He could have quit his job. He was an employee at will. And he could have quit his job. And he didn't. He stayed with the job. It's the same case as Mowder and Reck and Moore. It sounds like what you're saying is that someone is entitled to a bonus if they agree to continue their employment. Right. That's the Malenna case is that consideration is found in continuing employment. In that case, there was no detriment to either the employee or the employer by adding an arbitration provision to the employee handbook. And the Supreme Court found that continued employment was adequate consideration as it is for all employment agreements, which this is. It didn't add the requirement as found sometimes in the permanent employment cases of additional consideration. Don't bonuses or extra stipends or salaries usually when a bonus is based upon continued employment it has a time frame such as work an extra six months six years will give you more money or probably a salary increase after a year. Here we have a situation where the alleged bonus contract really says continued employment, correct? It says no. It says if you bring the job in under man hours, you will get paid a multiple of that. But that's what he testified his job was, is to bring the job in under man hours. That's what his job description or part of his job description was. So how is that any different? Well because they added the benefit to it of paying him to do that in fact do that and that changes What detriment was there? What did he do over and above that for his part for the consideration? He doesn't need to have a detriment. The employer needs to have the detriment. And the detriment here was the payment of the bonus. His benefit was to work his job and if he brought it in under man hours he would get paid. If Doyle doesn't apply, what case does? I think Milena applies. Can I distinguish Milena because I was thinking about what you said and I'm taking a short look at my synopsis. In that case, the defendant and employer changed his policy to require all employee claims to be submitted to binding arbitration. The defendant required the employee in that case to agree to the change as a condition of appointment. Did the defendant in this case force the plaintiff to agree to this as a condition of employment or I'm going to fire you if you don't agree with this? No. Then that's distinguishable from Milena then. The terms of employment didn't change in this case. The terms of employment did change because they added the bonus and said if you bring it in under man hours we're going to pay you. That was never, never part of the agreement prior to this offer. I think what we're getting astray here is you're not focusing on the nature of his employment. His work and what he was required to do by his own testimony didn't change day to day at all. He acknowledged it was his mandate and he always tried to bring in the job early to save the company money. So what changed after this bonus was offered? When you're offered a bonus and incentive to do something I think your whole attitude towards the job, your whole focus changes in the job. We see that all the time. And so I think here the continuing employment would under Milena be adequate consideration. Doesn't there have to be a relationship between the offer and the act constituting consideration? And therefore the promisee that is here the plaintiff has to perform the consideration that the promisor asks. He did. He performed what he was asked to do. Well if the bonus was promised for increased effectiveness doing the same job without increasing effectiveness isn't consideration, is it? Well I think it is in this case because of the continuing employment and he did in fact bring it in under the actual man hours and there was no... The record doesn't reflect that that was part of anyone's testimony. I'm sorry. That he actually worked harder to bring it after he knew about the bonus, that he worked harder to bring it in with fewer man hours? Well of course it's not. There wasn't an actual issue with the trial. Pardon? There wasn't an actual issue with the trial. Well there were, well this was the trial court had in front of it at the time it decided this motion unlimited. All the depositions that it had used in conjunction with the motion for summary judgment, right? So that's the factual scenario or information that I'm referring to. That could be, yes. In the case that Justice Hudson was referring to would it seem reasonable to suggest that analogically the offer made by the defendant was you accept this bonus or I'll fire you? I don't know that you can draw that conclusion here. It might be something that you could draw. Well... But he could... He, in the other case they imposed a if the employee didn't accept it he would be fired. So why not in this situation the condition that was ordered offered put on the table was you accept this bonus or we'll fire you. Which is consistent with the condition that the employer placed in the other case. I'm not sure what you're asking. Could the employer... I'm asking you if there's anything inconsistent about the analogy between the case that appears on its face to be distinguishable because it was supposedly a condition that the employer imposed upon the employee with the alternative that if there was noncompliance there would be a termination of employment imposed by the employer. And if we took the same factual scenario and substituted in the one distinguishing factor which is a benefit instead of a detriment and a benefit that if it wasn't accepted by the employee or client that he would be fired. So how does that case apply? Are you asking how millennium? You're... You cited to that case as the basis for your argument and in that case it was a detriment rather than a benefit with the threat of termination. And all I'm doing is I'm putting here are the blank lines or the blank spaces and I'm asking you how do you analogize the two cases? How are they parallel? I think they're parallel because Mr. Porter quit his job and that accepted the bonus and moved on. But he didn't. He maintained his job. But that's the problem in this case because if in fact I would agree with you, the parallel would be legitimate if the plaintiff ever testified that his job was going to usually be fired or he would lose his job if he did not accept this modification. But I think you passively conceded there was no threat of that. There was no statement by the defendant that you're going to lose your job and the plaintiff never testified he was going to lose his job if he didn't accept the bonus. Correct? Right. So that distinguishes it from Milena because in Milena the Supreme Court noted that the modification was required or the plaintiff would have lost his job in that case. You don't have the evidence to support that argument in this case. No, I don't. You're right. I appreciate that. I understand. You know, I think Gustafson versus Lindquist where the employer was promised a bonus and when it wasn't paid the court held in that case also that employment is sufficient consideration if the employee is not bound by contract to continue its employment. And the court ruled in favor of the employee. In Zor versus the court held the offer of severance pay had consideration when the employer continued to work for the employer after the offer was made. And I'm not sure I'm saying this right. Duloc versus St. Mary of Nazareth again in Hamburg the court found that sufficient consideration for the fact that the employee continued to work. So in essence are you making this argument, I mean, the plaintiff conceded his job really didn't change. He worked the same day. Can you argue that, or are you arguing the plaintiff detrimentally relied on his promise? If so, what was the detrimental reliance here? Well, I'm not arguing that he detrimentally relied. What I'm arguing is that he continued his employment after he was offered and the courts have found that that is sufficient consideration. I'm also arguing that I believe that there was a detriment to the employer here, that is the employer offered to pay additional monies to the additional monies to the employee if he brought it in under under hours. I know the pitfalls of that argument but it isn't an and or, it isn't an and situation. It is an or situation and that's the detriment. So are you saying this, are you somehow saying that the detriment to the defendant by paying more money somehow supersedes the pre-existing duty rule? Because how does that impact the pre-existing duty rule, which is very clear. Because it added additional wages to his contract. That's a detriment to the employer. He added additional wages. He was going to pay more money than what he was already obligated to pay. Right, but it doesn't, didn't change the plaintiff's job, you've agreed, at all. It didn't change the day-to-day job. I have one quick, I know our buzzer went off, one quick question with regard to the statute of frauds. Do you agree with the opposing counsel that full performance, although it would take it out of the statute of frauds, but it would have to be done within one year? That's not my understanding of the statute of frauds. That is, the full performance would have to be done within one year. No, I don't agree with that. I think full performance, whether it's one year, five years, ten years, takes it out of the statute of takes it out of the statute of frauds, and I believe that that's a subtle blot to stay on. Thank you.  Thank you, Your Honor. What fraud could be committed that the statute of frauds was supposed to prevent, preclude, remediate if a contract was fully performed within any period of time? I think we would look to the additional elements here of the statute of frauds, that he didn't reasonably rely on this alleged bonus when he was performing his job, and he also that his performance wasn't fully attributable to the alleged bonus, because as Your Honors have noted, he didn't perform anything different here. So in closing, I would just highlight the fact that there were no changes to the core terms and conditions of his employment in this instance, such as in Doyle and Molina, where there was a change to the actual core terms of that individual's employment. In Molina, for example, it was an arbitration agreement that was based on the terms that that employee was working under. Here, this misreporter was governed by a collective bargaining agreement, and the terms of that collective bargaining agreement never changed. So there was no detriment here, there was no unilateral changes that could have happened. Had we made a unilateral change to the terms of that employment, it would have been potentially an unfair labor practice, and it would have brought our claim back to our preemption argument. As we noted, he never testified that he worked harder, and he also didn't testify, for example, that he would have been terminated if he didn't accept this bonus. And in fact, we couldn't have terminated him if he didn't accept that bonus, because it also would have been in violation of the collective bargaining agreement. So it's not a similar situation in this instance. And again, counsel pointed to the Gustafson and Moore v. Arachnid cases. As I highlighted in my opening, those are distinguished because in those situations there was evidence on the record, and the court, especially in the Moore case, really noted to the fact that the bonus was to induce that continued employment. And that is not supported by the record in this instance. Those cases do not apply. Speaking to the, I believe you mentioned the Del Deleuille case, it's really limited to employee handbooks in that instance, and even the Doyle case, which came after, specifically noted that the holding has been really limited to the instance with employee handbooks. And again, that's changing the core terms of the employment relationship, a change that did not and could not have taken place in this instance. Counsel relies on the Doyle case, and his argument is that because I'm going to pay you something, that that's the detriment to me. But that argument doesn't make sense in light of the pre-existing duty, and in light of the fact that it's not a detriment to the employer to have something done more favorably. Thank you. And in closing, I'll just highlight again, if your honors have no further questions on consideration, that should your honors move past the consideration argument, this claim would also fail in light of the statute of frauds and in light of our preemption arguments. A bonus constitutes wages, which is a mandatory subject of bargaining, and pursuant to the National Labor Relations Act, we cannot bargain with bargaining. The advanced life case that we cited in our brief specifically states employers may not award a bonus to union employees without first negotiating with that union, and a failure to negotiate violates the act, which ultimately leads to our claim being preempted. Let me ask you a question now, we haven't got into it, because I think the key issue is the first, but here as I understand it, the CBA set minimum wages for union employees. It did not cover the subject of bonuses or prohibit side agreements, as the CBA said. Isn't that distinguishable? This agreement said nothing about bonuses. I would argue that it does, Your Honor, and that would fall under the preemption under the LMRA. In this instance, we would have needed to interpret the agreement in order to make a decision, and the circuit court did so, and she found that there was no language, and that did, in her opinion, allow for a bonus to be paid. Here, we would look to the preamble, the jurisdictional statement, and the union security statements, which explain that this CBA governs the wages and the terms and conditions of employment. And so when you read those as a whole, it would need to be interpreted whether that means that the CBA is the entire agreement between the parties, such as it was in the Payne case. And this was a simple breach of contract action. It didn't turn to any meaning of the CBA provisions, did it? It did, Your Honor, and here, one, we would need to interpret whether or not it's the entire agreement, and then we would also need to look to the wage provisions. Here it had a minimum wage provision, and also, for example, had a high pay provision. It would be an interpretation, warranting preemption, and we'd have to determine whether those are the high and the low boundaries that wages can be paid within, and whether any additional wages are allowed. So whether or not there was any consideration at all is governed by the CBA? Is that what you're telling us? No, Your Honor. Consideration fails first, and then should Your Honor's move pass and find that a valid contract did exist, it would be preempted as set forth in my briefing, pursuant to the Federal labor laws. If we find out that no valid contract existed, we would not do again, for the record, get into the statute of frauds or the preemption issue. Is that correct? Agreed, Your Honor. Okay. And for these reasons and the reasons set forth in my briefing, we respectfully ask that the Court reverse and enter judgment in Matthew Moran's favor. Thank you. Thank you. There will be a short recess. We have other cases on the call.